UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Edy Colop Guinac

v.

Civil No. 26-cv-549-LM-TSM
Opinion No. 2026 DNH 147 P

Christopher Brackett et al

**O R D E R**

Edy Colop Guinac brought this petition under 28 U.S.C. § 2241 challenging the legality of his civil immigration detention in the absence of an individualized bond hearing. This court granted his petition and ordered that he be provided with a constitutionally adequate bond hearing before an Immigration Judge (IJ). Presently before the court is Colop Guinac's motion to enforce this court's order granting his habeas petition. Doc. no. 10. He contends that the IJ's order denying bond violated his due process rights. Respondents object. Doc. no. 11. For the following reasons, Colop Guinac's motion (doc. no. 10) is denied.

## BACKGROUND

### I. Factual Background[1]

Colop Guinac, a Guatemalan national, unlawfully entered the United States in or around December 2012. He was not apprehended at that time. After entering

[1] The following facts are drawn from Colop Guinac's habeas petition (doc. no. 1) and his motion to enforce (doc. no. 10), along with the attachments to those pleadings. All facts recited herein were available to the IJ at the time of the bond hearing, and they are framed in the light most favorable to the IJ's decision. Acero v. FCI Berlin, Acting Warden, 825 F. Supp. 3d 52, 55 n.1 (D.N.H. 2026).

the United States, Colop Guinac begin residing in Chelsea, Massachusetts, where he has family, a stable residence, and regular employment.

Colop Guinac has a criminal record involving domestic violence against two romantic partners. The court will refer to these women respectively as AV1 and AV2.

A. AV1

1. December 2014

Colop Guinac and AV1 share a daughter together. Their daughter was an infant as of December 2014. On December 24 of that year, Colop Guinac called the Chelsea Police Department to report that AV1 was hiding his wallet from him. When officers arrived, they saw Colop Guinac standing outside with a bruised eye and a swollen nose. Colop Guinac stated that someone inside the house had punched him. The officers reported that Colop Guinac was speaking incoherently and that he smelled strongly of alcohol.

Inside the house, officers spoke with AV1, her mother, and AV1's minor son from a previous relationship. AV1 stated she was sitting in the living room with her daughter on her lap when Colop Guinac arrived at the residence drunk. Colop Guinac told AV1 he was missing his wallet and accused her of hiding it from him. AV1 stated that Colop Guinac began gathering some items to leave. Colop Guinac then aggressively grabbed at AV1 to take the baby from her and said he was leaving with the baby. AV1's mother attempted to stop Colop Guinac, but he pushed her away. When AV1's son heard the commotion in the living room, he entered the room

and hit Colop Guinac in the face to get him away from his mother and sister. At that point, Colop Guinac left the apartment and called the police.

Colop Guinac was charged with two counts of assault, one pertaining to AV1 and one pertaining to her mother. The charges were dismissed on the date of jury selection for failure to prosecute.

2. March 2018

AV1 obtained a restraining order against Colop Guinac in November 2016.[2] As of March 2018, the restraining order permitted Colop Guinac to have visitation with his daughter, but only through AV1's mother. The restraining order did not permit Colop Guinac to have contact with AV1 regarding visitation.

On March 3, 2018, Colop Guinac had visitation with his daughter. When he was late dropping her off, AV1's mother called him. Colop Guinac said he would not drop his daughter off with anyone but AV1. When AV1's mother's boyfriend met with Colop Guinac in a prearranged public place to pick up the child, Colop Guinac continued to insist that he would not let the child go with anyone but AV1. Colop Guinac aggressively approached the mother's boyfriend when he attempted to leave with the child, telling the boyfriend to hit him so he could call the police. Police

[2] In her application, AV1 wrote that Colop Guinac had been abusing and threatening her for two years, and that she feared something would happen to her or her daughter when they left the house. She also alleged that Colop Guinac refused to stay away from her and threatened to take their daughter away. The Chelsea District Court granted AV1's application and extended the restraining order several times. It was in effect until at least December 2021.

arrested Colop Guinac for attempting to violate the restraining order but later elected not to pursue charges.[3]

3. April 2019

On April 10, 2019, AV1 reported to the Chelsea Police Department that Colop Guinac was messaging her in violation of the restraining order. AV1 provided screenshots of Colop Guinac's messages. Although Colop Guinac had been messaging AV1 for some time, she decided to report the messages to the police when Colop Guinac began messaging her current boyfriend "asking him to meet up and fight to settle things." Doc. no. 10 at 47. Colop Guinac was charged with one count of violating a restraining order. A jury found Colop Guinac guilty of that offense. He was sentenced to one year of probation and was ordered to have no contact with the victim, abide by the restraining order, and complete an intimate partners violence program.

B. AV2

On October 31, 2021, the Chelsea Police Department received multiple calls that a man was assaulting a woman inside of an apartment. Several officers responded to the apartment, where they witnessed Colop Guinac actively assaulting a woman whom they later learned was his girlfriend (AV2) by pushing her into a wall. The officers restrained Colop Guinac and placed him in handcuffs. However, Colop Guinac became combative when officers attempted to put him in the back of

[3] AV1 did successfully modify the restraining order to remove visitation, however, and an officer filed a neglect petition on behalf of the child due to her witnessing the altercation.

their police vehicle, and two officers had to restrain him again. Colop Guinac was charged with two counts of assault. The prosecution entered a "nolle prosequi," or voluntary dismissal, as to both charges on the date of trial.

AV2 obtained a temporary restraining order against Colop Guinac on November 9, 2022. In her application, AV2 alleged that Colop Guinac, whom she was no longer dating, was calling her nonstop from private numbers and insulting and harassing her. AV2 alleged that she feared and was intimidated by Colop Guinac. A judge granted AV2's application on an ex parte basis and scheduled a hearing for November 22, 2022. It is unclear whether the restraining order was extended at that hearing or at any time thereafter.[4]

## II. Procedural Background

On May 15, 2026, ICE arrested Colop Guinac and initiated removal proceedings against him. Colop Guinac filed a habeas petition in this court on July 2, 2026, asserting, inter alia, that he is entitled to a bond hearing under 8 U.S.C. § 1226(a) because he is a member of the class certified in Guerrero Orellana v. Moniz, 813 F. Supp. 3d 185, 198-99 (D. Mass. 2025), aff'd, 188 F.4th 1 (1st Cir. 2026). Respondents did not dispute that Colop Guinac is a Guerrero Orellana class

[4] Colop Guinac presented the IJ with evidence that, at the time of the bond hearing in July 2026, he had pending restraining-order-violation charges in five separate dockets in East Boston District Court. See doc. no. 10 at 146. Other than a letter from Colop Guinac's defense attorney stating that the charges were likely to be dismissed, neither party provided the IJ with any factual information regarding these charges. The court therefore does not consider them.

member.[5] This court therefore ordered respondents to provide petitioner with a constitutionally adequate bond hearing before an IJ under § 1226(a).

At the bond hearing, respondents provided the IJ with evidence of Colop Guinac's history of domestic violence as contained in police reports, criminal complaints, docket sheets, and restraining orders. Respondents argued that the evidence established Colop Guinac's dangerousness by clear and convincing evidence. Colop Guinac, through counsel, argued that respondents' evidence was not recent and therefore failed to establish his present dangerousness by clear and convincing evidence. In a signed declaration, Colop Guinac acknowledged "the harm [he] caused" by "act[ing] recklessly with regards to . . . relationships" "[f]or many years," but stated that he has sought out mental health treatment and continues to see a therapist on a regular basis. Doc. no. 10 at 113. He also presented evidence of his significant community ties, family support, and stable residence and employment.

The IJ took bond under advisement and issued a written order denying bond a few days after the hearing. In her order, the IJ found that respondents proved by clear and convincing evidence that Colop Guinac was dangerous. She made this finding based on Colop Guinac's history of domestic violence "involving multiple

[5] Given respondents' position that Colop Guinac was entitled to a § 1226(a) hearing and the current procedural posture of this case, the court does not consider whether Colop Guinac's restraining-order-violation conviction constitutes a crime of moral turpitude that disqualifies him from bond-hearing eligibility. <u>See</u> 8 U.S.C. §§ 1226(c)(1)(A), 1182(a)(2)(A) (mandating detention for most noncitizens who are convicted of a crime of moral turpitude).

family members, the issuance of two protective orders against [him], and violations or attempted violations of those orders." Doc. no. 10 at 154. The IJ stated that she considered Colop Guinac's rehabilitative efforts but found that they did not sufficiently mitigate his dangerousness "where there are continued alleged violations, the level of violence demonstrated and disregard for court" orders. Id. She found that Colop Guinac's conduct was "recent and not remote," and that no alternatives to detention would adequately address his dangerousness.[6] Id. at 154-55.

## DISCUSSION

In Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021), the First Circuit held that, in order to detain a noncitizen pursuant to a bond hearing under § 1226(a) and its implementing regulations, due process requires the government to prove that the noncitizen is (1) dangerous by clear and convincing evidence or (2) a flight risk by a preponderance of the evidence. Colop Guinac asserts that the IJ failed to apply this standard.

This court and countless others have held that the INA does not strip district courts of jurisdiction to review whether an IJ properly applied Hernandez-Lara in a given case. E.g., Mayancela Mayancela v. FCI Berlin, Warden, Civ. No. 25-cv-348-

[6] The IJ also found that respondents proved by a preponderance of the evidence that Colop Guinac poses a flight risk that no amount of bond or conditions of release could ameliorate.

LM-TSM, 2025 WL 3215638, at *4-5 (D.N.H. Nov. 18, 2025).[7] However, this court's authority to review Colop Guinac's claim is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). To obtain relief, Colop Guinac must show either (1) that the language of the IJ's bond order demonstrates that the IJ applied the incorrect standard or (2) that the evidence was insufficient as a matter of law to find dangerousness or flight risk to the requisite degree of certainty. Id. Here, Colop Guinac asserts that the IJ's bond denial violated his due process rights because it was based on legally insufficient evidence.

The court disagrees. Viewing the evidence in the light most favorable to the IJ's decision, a reasonable jurist could have found that respondents proved dangerousness by clear and convincing evidence.[8] Respondents put forth ample evidence that Colop Guinac repeatedly assaulted his intimate partners and family members. In 2014, three separate eyewitnesses reported to police that Colop Guinac attempted to forcefully grab his infant daughter out of AV1's hands, and that he pushed AV1's mother to prevent her from aiding her daughter. In 2016, AV1 obtained a restraining order against Colop Guinac, citing her fear that Colop Guinac would harm her or their daughter when they left the house, his threats to

[7] Respondents assert that 8 U.S.C. § 1226(e) bars review of whether the IJ applied the constitutionally required burden of proof. The court adheres to its prior ruling that, while § 1226(e) may divest this court of jurisdiction to "review the IJ's discretionary judgment" regarding bond, "the IJ does not have discretion to fail to apply the burden of proof that due process requires." Mayancela, 2025 WL 3215638, at *5.

[8] In light of this conclusion, the court need not review whether the IJ's alternative flight risk finding was based on legally sufficient evidence.

take the child from her, and his persistent harassment. Colop Guinac attempted to violate this restraining order in 2018 by refusing to return the child to MV1's grandmother unless MV1 attended the hand-off. He succeeded in violating this restraining order in 2019 when he repeatedly sent MV1 messages, which MV1 reported to the police after Colop Guinac threatened to fight her new partner. Then, in 2021, police officers witnessed Colop Guinac assault MV2 by pinning her against a wall after multiple neighbors called the police to report an ongoing assault. Thereafter, MV2 successfully obtained her own restraining order against Colop Guinac. A reasonable jurist could find Colop Guinac dangerous by clear and convincing evidence based on the foregoing.

Resisting this conclusion, Colop Guinac contends that much of the foregoing evidence is drawn from police reports and notes that only the 2019 incident resulted in a conviction. He asserts that the IJ erred as a matter of law in crediting allegations contained in reports that did not yield a conviction. Once again, the court disagrees. An IJ may give weight to allegations within a police report when they are supported by corroborating evidence. Rosa v. Garland, 114 F.4th 1, 17 (1st Cir. 2024). Although the First Circuit has thus far left open the question of whether this corroboration can come from within the police report itself (i.e., "internal" corroboration), id. at 22, multiple district courts have held that it may. Macedo v. Wesling, Civ. No. 26-cv-36-JL-TSM, 2026 WL 1413156, at *3-4 (D.N.H. May 20, 2026) (Laplante, J.); Motylev v. Strafford Cnty. Dep't of Corrs., Superintendent, Civ. No. 26-cv-103-SE-AJ, 2026 WL 2516939, at *3-4 (D.N.H. Aug. 5, 2026) (Elliott, J.);

Ramirez v. Nessinger, No. 26-cv-320-JJM-AEM, 2026 WL 1831401, at *6-7 (D.R.I. June 25, 2026) (McConnell, J.).

The allegations in the police reports pertaining to the 2014, 2018, and 2021 incidents are supported by internal corroboration.[9] Regarding the 2014 incident, the police spoke with three eyewitnesses other than Colop Guinac. AV1's son claimed that he struck Colop Guinac in the face to stop his assault, and when police arrived, they saw that Colop Guinac was suffering from facial bruising and swelling. Moreover, the witnesses' claim that the altercation began when Colop Guinac accused AV1 of hiding his wallet is corroborated by Colop Guinac's call to the police, where he claimed that his wallet had been stolen. The allegations in the report pertaining to the 2018 incident are also supported by multiple eyewitnesses, and the allegations of each witness are consistent with one another. And several officers personally witnessed the 2021 assault. In sum, while Colop Guinac was not convicted of an offense as a result of these allegations, "the underlying police reports are each corroborated within their four corners by multiple forms of inculpatory information."[10] Motylev, 2026 WL 2516939, at *4. The IJ was therefore permitted to give weight to those allegations.

---

[9] Colop Guinac does not dispute that the IJ could permissibly credit the allegations in the police report pertaining to the 2019 incident, which yielded a conviction.

[10] Arguably, the reports are also supported by external corroboration in the form of Colop Guinac's declaration submitted to the IJ, where he appears to acknowledge responsibility for "the harm [he] caused" by acting "recklessly" in his relationships "[f]or many years." Doc. no. 10 at 113.

Colop Guinac also argues that the IJ's determination that he is presently dangerous violates his due process rights because his most recent alleged conduct occurred several years ago. The court agrees that an IJ must evaluate a noncitizen's dangerousness or flight risk "on a current basis," and that IJs weighing "past criminal charges against a noncitizen [must] look to, among other things, 'the recency of such criminal activity.'" Garcia v. Hyde, 817 F. Supp. 3d 112, 129 (D.R.I. 2025) (emphases and brackets omitted) (first quoting Chi Thon Ngo v. Immigr. & Naturalization Serv., 192 F.3d 390, 398 (3d Cir. 1999); then quoting In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), abrogated on other grounds by Hernandez-Lara, 10 F.4th at 41). Here, however, the IJ could have reasonably concluded based on the evidence presented that Colop Guinac continues to pose a danger. A reasonable IJ could have found that Colop Guinac engaged in a yearslong cycle of domestic violence against two separate romantic partners. As recently as 2022, one of those former partners obtained a restraining order against Colop Guinac. The facts of this case are distinguishable from those in which a court has found that an IJ based a bond denial on "stale" evidence.[11] Cf. Garcia, 817 F. Supp. 3d at 129-30 (rejecting flight risk finding based on arrest warrant out of Guatemala issued more than ten years ago which had since been vacated).

[11] While Colop Guinac argued before the IJ that he has obtained mental health treatment in recent years, he also submitted evidence to the IJ that he has been receiving mental health treatment and medication since March 2016—i.e., during most of the instances of domestic violence discussed above. A reasonable IJ could therefore discount the import of Colop Guinac's continued treatment.

Colop Guinac next contends that the IJ violated his due process rights by failing to consider alternatives to detention that would sufficiently mitigate dangerousness. Respondents assert that the IJ's dangerousness finding precludes consideration of alternatives to detention; in other words, because the IJ found Colop Guinac dangerous, she was required to detain him regardless of whether conditions of release could have reduced his dangerousness below the "clear-and-convincing" threshold.[12] The court need not resolve the parties' dispute. Even assuming due process required the IJ to consider alternatives to detention, the IJ did so, and she did "not find that any alternatives to detention or amount of bond would mitigate [Colop Guinac's] danger." Doc. no. 10 at 154-55. While the IJ's order does not explicitly state which alternatives to detention she considered and found lacking, there was substantial evidence to support the IJ's express conclusion that detention was the only viable option given the "level of violence" Colop Guinac demonstrated and his repeated disregard for court orders. Id. at 154. The IJ could have reasonably found that Colop Guinac would not abide by conditions of release intended to mitigate his dangerousness.

For these reasons, Colop Guinac has not shown that the IJ's dangerousness finding was based on legally insufficient evidence or that the dangerousness finding otherwise violated his due process rights.

[12] The undersigned acknowledges that other judges within this district have so found. Lopez Flores v. Brackett, Civ. No. 26-cv-94-PB-TSM, 2026 WL 1179959, at *4 (D.N.H. Apr. 30, 2026); Motylev, 2026 WL 2516939, at *4.

## CONCLUSION

Colop Guinac's motion to enforce (doc. no. 10) is denied. The clerk is directed to enter judgment and close the case.

SO ORDERED.

Landya McCafferty
United States District Judge

Octobber 7, 2026

cc: Counsel of Record